# EXHIBIT A

Robert Half®

Employment Agreement

This agreement is made as of July 11, 2016, by and between ROBERT HALF INTERNATIONAL INC. ("Employer") and Jesse Cohen ("Employee").

WHEREAS, Employer conducts business as an executive recruiting firm, information technology consulting and contract staffing firm, employment agency and temporary personnel service.

WHEREAS, Employer conducts its business either directly or indirectly through various direct or indirect subsidiaries, divisions and affiliates (Employer and its subsidiaries, divisions, and affiliates being collectively referred to herein as the "RHI Companies").

WHEREAS, the RHI Companies specialize in the recruitment and placement of persons for regular employment and temporary employment in certain specialized fields.

WHEREAS, Employer expends time and money to teach its employees the business development techniques and business methods Employer has developed in its specialized fields of expertise.

WHEREAS, Employee desires to enter the employ of Employer.

WHEREAS, Employee, during the course of Employee's employment with Employer, will have access to confidential applicant and candidate lists and information, customer lists and information and other confidential information of the RHI Companies.

WHEREAS, Employer wishes to employ Employee upon the terms and conditions in this Agreement and wishes reasonably to protect confidential information of the RHI Companies and to protect the RHI Companies from unfair competition by Employee.

WHEREAS, prior to Employee's decision to enter into employment with Employer, and prior to Employee's decision to terminate Employee's prior employment, Employee was aware that, as a condition of Employee's employment with Employer, Employee would be required to enter into an employment agreement which would restrict Employee's right to compete with the RHI Companies for a period of time following the termination of Employee's employment with Employer, and that this Agreement shall be automatically assigned to any of the RHI Companies to which Employee may be transferred.

NOW THEREFORE, in consideration of the premises and the mutual agreements herein set forth, the parties agree as follows:

1. Employment. Employer hereby employs Employee and Employee hereby accepts

such employment upon the terms and conditions hereinafter set forth. Employee represents and warrants to Employer that Employee's execution and delivery of this Agreement and the performance of Employee's duties as an employee of Employer as contemplated by this Agreement does not and will not breach or conflict with any obligation of Employee to a previous employer or any obligation to keep confidential any information acquired by Employee prior to Employee's employment hereunder. Employee further represents and warrants that Employee will not bring to Employee's employment by Employer or make use of during such employment any proprietary information, ideas or materials of others.

2. Termination. **THE EMPLOYMENT RELATIONSHIP BETWEEN EMPLOYEE AND EMPLOYER SHALL CONSTITUTE AN "AT WILL" EMPLOYMENT, WHICH MAY BE TERMINATED AT ANY TIME FOR ANY REASON OR NO REASON**. Either party, with or without cause, may terminate Employee's employment at any time with or without advance notice to the other party.

3. Duties. Employee shall have such duties as may be assigned from time to time by Employer. It is expected that among other responsibilities, Employee may be expected to manage and develop business relations on behalf of the RHI Companies with customers and prospective customers, to aid such customers in hiring employees or contract consultants and to supply them with temporary personnel. Employee shall have and use such title as Employer shall direct from time to time.

This Agreement shall govern the employment of Employee regardless of the division or duties to which Employee is assigned. A change in assignment, whether within the same division or RHI Company or to a different division or RHI Company, shall have no effect on the terms or provisions of this Agreement, and shall not, except as provided below, require any amendment hereto.

4. Performance of Duties. During Employee's employment by Employer, Employee shall devote Employee's best efforts and entire working time to the performance of Employee's duties, shall perform such duties to the best of Employee's ability, and shall not render services to or enter into the employment of any person, firm, corporation or other business entity other than one of the RHI Companies without the Employer's written consent. Employee shall abide by Employer's rules, regulations and practices concerning vacation, sick leave and other matters as in effect from time to time. Employee shall be present at Employer's place of business each business day during Employer's office hours, except when making calls on Employer's business and except for vacation and other absences taken in accordance with Employer's policies. This Agreement shall be deemed to have been made and performed in each state in which Employee has performed duties for Employer, including each state in which there is an office for which Employee has rendered services or over which Employee has exercised any form of supervisory authority.

Employee hereby consents to the use and publication, without further consideration, of Employee's name, picture and image in training materials and other materials relating to the business of the RHI Companies, regardless of whether such use or publication is in the form of printed matter, photographs, audio tape, video tape, computer disk, electronic transmission, or otherwise. Such consent applies to both the use and publication of such items during Employee's

employment with employer and during a reasonable time thereafter, such reasonable time thereafter to depend upon the nature of the use.

5. Compensation. Employee shall receive future wages for services rendered to Employer. In the Employer's sole discretion, bonuses, deferred compensation plans, health insurance and other benefit plans may be instituted from time to time. Employee can have no expectations regarding such plans or their continuation. All of such plans may be instituted, amended, and discontinued at any time at Employer's sole discretion, without Employee's consent.

6. Personnel Policies, Practices and Procedures; Employer's Rights. Employer reserves the right to change or terminate unilaterally, without notice, any and all employment policies, rules, regulations, practices, procedures and employee benefit programs at any time and for any reason. In no event shall Employee be deemed to have a vested right in the continuation of any of such policies, rules, regulations, practices, procedures or employee benefit programs, whether published or otherwise. It is the intent and purpose of this paragraph to assure that this employment arrangement constitutes an "at will" relationship, and Employer retains full right to modify any terms and conditions of employment. Nothing herein contained or which may otherwise be subsequently promulgated by Employer, whether oral or written, shall be construed as a guarantee of continued employment or of any terms, conditions or benefits related thereto.

7. Definitions. Unless the context clearly indicates otherwise, the following terms, when used in this Agreement, shall have the meanings set forth below:

"Applicable Office" means any office of any of the RHI Companies for which Employee has performed work, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date.

"Competitor" means any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form.

"Customer" means any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date.

"Other Employee" means any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor.

"Solicit" means soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization.

"Termination Date" means the date on which Employee's employment with the RHI Companies is terminated by either Employer or Employee.

8. Disclosure or Misuse of Confidential Information. Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies or any third parties to whom RHI Companies owe a duty of confidentiality, including, without limitation, information with respect to the name, address, contact persons or requirements of any existing or prospective customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract, regular, or full-time employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies. Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets. Upon termination of Employee's employment, Employee shall immediately deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession, custody or control. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

9. Restrictive Covenant. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason. Notwithstanding the foregoing, this Section shall not apply in California or any other state in which such provisions are not enforceable under applicable State law.

10. Non-solicitation of Customers. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

11. Non-solicitation of Other Employees. In consideration and view of (i) Employee's position with the RHI Companies, (ii) the valuable consideration furnished to the

Employee by Employer employing Employee and entering into this Agreement, (iii) Employee's access to confidential information and trade secrets of the RHI Companies, and (iv) the value of such confidential information and trade secrets to the RHI Companies, for a period of twelve (12) months after the Termination Date (regardless of the reason for termination or whether such termination was by Employer or by the Employee), Employee agrees that Employee shall not, directly or indirectly, at any time or for any reason, either alone or jointly, with or on behalf of others, whether as principal, partner, agent, representative, equity holder, director, employee, consultant or otherwise, Solicit any Other Employee to leave the employ of the RHI Companies, either for Employee's own account or for any other person, firm or company. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

12. Intent. The provisions of each of Sections 8, 9, 10 and 11 hereof are independent and separate provisions and nothing contained in any such section shall be deemed to subtract from, replace, modify, define, limit or otherwise abridge the provisions of any other such section.

13. Wrongful Use of Employer's Name. After termination of Employee's employment with Employer, Employee shall not indicate on any stationery, business card, advertising, solicitation or other business materials (electronic or otherwise) that Employee is or was formerly an employee of Employer, any of its divisions, or any of the RHI Companies except in the bona fide submission of resumes and the filling out of applications in the course of seeking employment. The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

14. Injunction. In view of Employee's access to confidential information and trade secrets and in consideration of the value of such property to Employer and the other RHI Companies, Employee expressly acknowledges that the covenants set forth in Sections 9, 10, 11 and 13 are reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests of Employer and the other RHI Companies, and that the enforcement thereof would not prevent Employee from earning a livelihood. Employee further agrees that in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI Companies therefore will not have an adequate remedy at law. Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security; provided that nothing herein shall be construed as limiting any other legal or equitable remedies Employer or the other RHI Companies might have. The laws of the state in which the activity underlying such breach occurred or threatens to occur shall govern any action brought to enforce such covenants, without reference to such state's choice of law rules.

15. Intellectual Property. Employee agrees that all rights to inventions, writings, artwork, graphics, ideas, market research, strategies, source code and documentation, incoming and outgoing e-mails, existing and prospective clients' information, existing and prospective candidates' information, software programs, designs, specifications, flowcharts, formulae and algorithms, reports, spreadsheets, presentations, and any other intellectual property conceived, written, developed, originated, fixed or reduced to practice by Employee (collectively, "Works"), whether or not during scheduled work hours, alone or with others, during the term of

employment which (a) relate in any manner at the time of conception or reduction to practice to Employer's business or the actual or demonstrably demonstrated anticipated research or development of the Employer, (b) result from any work performed by the Employee on behalf of Employer, or (c) were created using the resources or trade secret information of Employer shall be the sole and complete property of Employer, whether as a work made for hire or otherwise. Works shall include all information relating to clients and candidates collected by Employee in any manner by any means through any media during Employee's employment with Employer. Employee hereby assigns and conveys Employee's entire right, title and interest to Works and any and all resulting copyrights, patents and trade secrets to Employer. Employee agrees to execute all applications or registrations for patents and copyrights, and any other instruments deemed necessary or helpful for Employer to secure and enforce its rights. Employee shall make no charge or claim for additional compensation or any other consideration for signing such documents. Employee's agreement to assign to Employer any rights as set forth in this Section shall not apply to any invention that qualifies fully under the provisions of California Labor Code Section 2870 or other similar state statute or law. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

16. Company Resources and Privacy. Employer will grant Employee access to certain Company resources worldwide, including, but not limited to, electronic mail, the Internet and intranet, online social networks, bulletin boards, and electronic devices, computer systems, storage devices, network systems, wireless devices, and telephonic systems (collectively referred to as "Company Resources"). Employee agrees that Employee shall have no expectation of privacy with respect to the use of Company Resources, regardless of physical location or medium. Employee hereby consents to all third party vendor's disclosure, to Employer, of the contents of all messages and communications as to which Employee is the originator, addressee, or an intended recipient. Employer's foregoing right to monitor employee's communications cannot be waived or varied by any oral representation of any supervisor or any other employees of Employer. The provisions of this Section shall survive any termination of either Employee's employment or this Agreement for any reason.

17. Waiver. Failure of any party to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of the right to subsequently insist upon strict compliance with such term, covenant or condition or a waiver or relinquishment of any similar right or power hereunder at any subsequent time.

18. Notice. All notices under this Agreement shall be given in writing and shall be served upon the person to whom the notice is addressed personally or by mail. Notices given to the Employee shall be at the home address of such person as indicated in Employer's records, or such other address as may hereafter be designated by Employee. Notices to the Employer shall be addressed to the Employer's principal place of business at the time any notice is given.

19. Severability. The provisions of this Agreement are severable. If any provision is found by any court of competent jurisdiction to be unreasonable and invalid, that determination shall not affect the enforceability of the other provisions. Furthermore, if any of the restrictions against various activities is found to be unreasonable and invalid, the court before which the matter is pending shall enforce the restriction to the maximum extent it deems to be reasonable or valid. Such restrictions shall be considered divisible both as to time and as to geographical area, with each month being deemed a separate period of time and each one mile radius from any

office being deemed a separate geographical area. The restriction shall remain effective so long as the same is not unreasonable, arbitrary or against public policy.

20. Limitation on Claims. Employee hereby agrees that no claim against any of the RHI Companies shall be valid if asserted more than six months after Employee's Termination Date, and waives any statute of limitations to the contrary.

21. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought, without reference to such state's choice of law rules. In no event shall the choice of law be predicated upon the fact that Employer is incorporated or has its corporate headquarters in a certain state.

22. Entire Agreement. This instrument contains the entire agreement of the parties, and supersedes all prior or contemporaneous agreements, representations or understandings, whether written or oral, with respect to the subject matter hereof. No provision of this Agreement may be changed or waived except by an agreement in writing signed by the party against whom enforcement of any such waiver or change is sought. No employee manual, policy statement or similar item issued from time to time by Employer or any of the other RHI Companies shall constitute part of the employment agreement between Employer and Employee or modify the terms of this Agreement in any way.

23. Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of Employer and its successors and assigns and Employee, Employee's heirs and personal representatives. This Agreement shall be automatically assigned, without any further action by Employer or Employee, to any of the RHI Companies to which Employee may be transferred, which assignee shall then be deemed, as appropriate, the "Employer" for purposes of this Agreement.

24. Third Party Beneficiary. Each of the RHI Companies is a third party beneficiary of this Agreement and each of them has the full right and power to enforce rights, interests and obligations under this Agreement without limitation or other restriction.

ROBERT HALF INTERNATIONAL INC.

By ______________________

Title Branch Manager

By: ______________________
Employee

If any other provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement and all other provisions shall remain in full force and effect; provided, however, that in no event shall this Agreement result in a class, collective, or representative claim being heard in arbitration.

Consideration

The promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

Voluntary Agreement

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

| Employee: | ROBERT HALF INTERNATIONAL INC. |
|---|---|
| [signature] | [signature] |
| Signature of Employee | Signature of Authorized Company Representative |
| Jesse Cohen | Branch Manager |
| Print Name of Employee | Title of Representative |
| 7/11/2016 | 7/11/2016 |
| Date | Date |